# 15-2516-cr

To be argued by:
**ALLEGRA GLASHAUSSER**

_____
_____

United States Court of Appeals
For the Second Circuit
_____

Docket No. 15-2516-cr
_____

UNITED STATES OF AMERICA,

Appellee,

-against-

GREGORY JOHN SCHAFFER, a/k/a John Archambeault,

Defendant-Appellant.

_____

APPEAL FROM A JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

**REPLY BRIEF FOR DEFENDANT-APPELLANT
GREGORY JOHN SCHAFFER**

_____

Federal Defenders of New York, Inc.
 Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8742

Attorney for Defendant-Appellant
 Gregory John Schaffer

ALLEGRA GLASHAUSSER,
 Of Counsel

# Table of Contents

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................ 1

Introduction ............................................................................................................ 1

    <u>Point I</u>

    Appellant was in custody when he twice
    asked to leave an un-*Mirandized* interrogation
    and was twice unequivocally told that he could not .............................................. 2

    <u>Point II</u>

    Admitting videos of appellant apparently
    sexually assaulting two young girls, who were
    completely unrelated to the charged crimes,
    violated appellant's due process rights. .................................................................. 8

    A.    Rule 413, which allows evidence of any prior sexual
          assault to prove a defendant's general propensity
          to commit sexual assault, is facially unconstitutional. ............................... 9

    B.    The admission of the other sexual assault evidence
          violated appellant's due process rights. ....................................................... 13

    C.    The videos of unrelated sexual assaults were more prejudicial than
          probative. ........................................................................................................ 13

Conclusion ............................................................................................................... 15

# Table of Authorities

**<u>CASES</u>**

*Chapman v. California*,
    386 U.S. 18 (1967)............................................................................................. 8

*Morris v. New York*,
    2008 WL 850679 (E.D.N.Y. Mar. 29, 2008)........................................................ 10

*Old Chief v. United States*,
    519 U.S. 172 (1997)........................................................................................... 9

*State v. Cox*,
    781 N.W.2d 757(Iowa 2010) ............................................................................ 11

*State v. Ellison*,
    239 S.W.3d 603 (Mo. 2007) ............................................................................ 11

*United States v. Badmus*,
    325 F.3d 133 (2d Cir. 2003) ............................................................................. 4

*United States v. Bailey*,
    743 F.3d 322 (2d Cir. 2014) ............................................................................. 8

*United States v. Donaldson*,
    577 F. App'x 63 (2d Cir. 2014)........................................................................ 9

*United States v. Faux*,
    2016 WL 3648331 (2d Cir. July 8, 2016) ............................................................ 6

*United States v. Groezinger*,
    625 F. Supp. 2d 145 (S.D.N.Y. 2009).................................................................. 4

*United States v. James*,
    113 F.3d 721 (7th Cir. 1997)............................................................................. 5

*United States v. Larson*,
    112 F.3d 600 (2d Cir. 1997) ............................................................................. 10

*United States v. Lifshitz*,
    2004 WL 2072468 (S.D.N.Y. Sept. 15, 2004) .......................................................... 6

*United States v. Martindale*,
    790 F.2d 1129 (4th Cir. 1986) ................................................................................ 5

*United States v. Mitchell*,
    966 F.2d 92 (2d Cir. 1992) .................................................................................... 5

*United States v. Newton*,
    369 F.3d 659 (2d Cir. 2004) .................................................................................. 5

*United States v. Pollaro*,
    733 F. Supp. 2d 364 (E.D.N.Y. 2010) .................................................................. 6

*United States v. Romaszko*,
    253 F.3d 757 (2d Cir. 2001) .................................................................................. 6

*United States v. Rorex*,
    737 F.2d 753 (8th Cir. 1984) ................................................................................ 5

*United States v. Shteyman*,
    2011 WL 2006291 (E.D.N.Y. May 23, 2011) ...................................................... 5

*United States v. Vado*,
    87 F. Supp. 3d 472 (S.D.N.Y. 2015) ..................................................................... 5

**Preliminary Statement**

This brief is submitted in reply to the government's brief, which was filed on April 13, 2016. Appellant was granted an extension to July 13, 2016 to file this reply.

**Introduction**

1. Appellant Gregory Schaffer argued in his main brief that a reasonable person in his position would have believed he was in custody after agents twice said he could not leave an interrogation, even after he explained he wished to make a short trip up the block to see an attorney who worked in criminal law. In response, the government flatly rejects the importance of the agents telling Mr. Schaffer he could not leave, asserting that this prohibition on any movement was only temporary. Gov. Br. 11, 36-37. Because the record does not support that the restriction was temporary and none of the other circumstances of the interrogation dispelled the reasonable impression that Mr. Schaffer was in custody, this Court should hold that he was in custody and that his un-*Mirandized* statements should be suppressed.

2. In his main brief, Mr. Schaffer argued that Rule 413 is unconstitutional because it allows evidence of past sexual assault to be admitted for *any* reason, including as evidence of general criminal propensity. App. Br. at 33-35. The government does not dispute the fundamental constitutional principle that general propensity evidence may not be used as proof that the defendant committed the particular criminal act charged.

The government also does not dispute that Rule 413 is specifically designed to increase conviction rates by allowing prejudicial evidence unrelated to the charged crimes to be used against defendants. And it does not dispute that this rule reduces the prosecution's burden of proof and risks jury verdicts based on the incorrect assumption that someone who has committed a prior sex offense also committed the charged sex offense. In short, it sidesteps Mr. Schaffer's basic, fundamental constitutional arguments. Instead, the government response focuses on rebutting Mr. Schaffer's evidentiary argument that the videos of unrelated sexual assaults should have been rejected as more prejudicial than probative. For the reasons below and in Mr. Schaffer's main brief, this Court should reverse Mr. Schaffer's conviction and order a new trial because the district court should have excluded videos of unrelated sexual assaults on constitutional or evidentiary grounds.

### Point I

> Appellant was in custody when he twice asked to leave an un-*Mirandized* interrogation and was twice unequivocally told that he could not.

In his main brief, Mr. Schaffer argued that he was in custody when two agents twice explicitly prohibited him from leaving an interrogation that occurred while seven other agents riffled through his small office. App. Br. at 23-32. Because he was never read his *Miranda* rights, he argued that his statement should have been

suppressed. App. Br. at 23-32. In response, the government does not dispute that the interrogators explicitly denied Mr. Schaffer's requests to leave. Gov. Br. at 10-11, 36-37. Instead, the government argues that when the interrogators told Mr. Schaffer that he was "not free to leave," what they really meant was that he was *temporarily* not free to leave. Gov. Br. at 36-37. The government does not explain why this interpretation is reasonable and it is unsupported by the record: The agents did not tell Mr. Schaffer he could leave later and Mr. Schaffer was in fact formally arrested immediately after the interrogation concluded. None of the other factors the government points to dispel the reasonable impression that, because he was not allowed to leave, he was in custody. This Court should, therefore, reject the government's argument, hold that Mr. Schaffer was in custody, and suppress his statements.

  The government's conclusion that the prohibition on Mr. Schaffer's movement was temporary simply begs the question: The government assumes the very fact it is trying to prove by incorrectly asserting that there is "no dispute" that the agents said that Mr. Schaffer could not leave "at that point" or "while the agents were executing the warrant." Gov. Br. 11, 36. The record cite the government points to, A. 32, includes no testimony that agents told Mr. Schaffer he could not leave "at that point" or "while the agents were executing the warrant." Instead, the agents unequivocally told Mr. Schaffer that he could not leave; there is nothing in the record suggesting the agents said this prohibition was temporary.

3

The government also asserts that Mr. Schaffer was told that the reason he could not leave was because it would "compromise[] the security of the investigation" and that, "[g]iven this explanation," he would not have believed he was in custody. Gov. Br. at 37. Again, the government does not explain why this conclusion makes sense. Officer Robert Mancene did testify that he was "pretty sure" that he told Mr. Schaffer that the reason Mr. Schaffer could not leave was a "security issue." A. 32, 46. Mancene, however, denied describing the "security issue" to Mr. Schaffer, saying he did not recall telling Mr. Schaffer that the "issue" was that the entrance was blocked by boxes. A. 46. The government does not explain why a reasonable person would believe they were only temporarily detained when told they were prohibited from going to visit a nearby lawyer because of an undescribed "security issue."

A comparison to *United States v. Groezinger*, 625 F. Supp. 2d 145, 158 (S.D.N.Y. 2009), which the government asserts is the case "most" like this one, Gov. Br. at 37, underscores that Mr. Schaffer was never told the prohibition on leaving would be temporary. In *Gorezinger*, the defendant was told he would be "late" to a morning meeting, implying that he would be allowed to leave and go to his meeting at some point. In contrast, Mr. Schaffer was not told that he could visit his lawyer later or at

4

any point.[1] The only reasonable conclusion Mr. Schaffer could have drawn when he was twice told he could not leave was that he was in custody.

The other circumstances do not rebut this conclusion. The government points out that when the agents first entered the office, they told Mr. Schaffer that he was not under arrest. Gov. Br. at 33-36. But any reassurance from this preliminary comment would have been completely extinguished by the subsequent denial of any freedom of movement. *See United States v. Newton*, 369 F.3d 659, 676-77 (2d Cir. 2004) (statement that the defendant was not under arrest undercut by contradictory fact that he was handcuffed); App. Br. at 27-28.

The government also points to the fact that the interrogation occurred in Mr. Schaffer's small office, lasted about an hour over a two-hour period, and Mr. Schaffer was not handcuffed, but could drink and smoke. Gov. Br. 33-36. But, in the cases the government cites in support, the courts based their conclusions that the defendants were not in custody on the fact that the defendants were *never* told they could not leave. Gov. Br. at 33-36, citing *United States v. James*, 113 F.3d 721 (7th Cir. 1997) (defendant never asked to leave, was actually allowed to walk outside to smoke, and was not arrested at the end of the interrogation); *United States v. Mitchell*, 966 F.2d 92,

---

[1] *United States v. Badmus*, 325 F.3d 133, 139 (2d Cir. 2003), the other case the government cites to support the proposition that "courts in this Circuit" have found similar "or even more drastic" movement restrictions were not custody fares no better. Gov. Br. at 37. In *Badmus*, unlike here, the agents explicitly said that they would leave if the defendants asked them to do so.

98 (2d Cir. 1992) ("an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave"); *United States v. Martindale*, 790 F.2d 1129, 1133 (4th Cir. 1986) ("at liberty to terminate the discussion and to go his way anytime he chose"); *United States v. Rorex*, 737 F.2d 753, 755 (8th Cir. 1984) ("no attempt to restrict [ ] freedom of action. [Defendant] not arrested until many months had passed"); *United States v. Vado*, 87 F. Supp. 3d 472, 479 (S.D.N.Y. 2015) (defendant "never asked to leave the bedroom or the apartment"); *United States v. Shteyman*, 2011 WL 2006291, at *16 (E.D.N.Y. May 23, 2011) (contrasting cases in which defendant is told he is not free to leave); *United States v. Pollaro*, 733 F. Supp. 2d 364, 370 (E.D.N.Y. 2010) (agents did not "affirmatively convey that he was not free to leave"); *United States v. Lifshitz*, 2004 WL 2072468, at *7 (S.D.N.Y. Sept. 15, 2004) (no evidence defendant said that he wanted to end the interview, asked to leave, or tried to leave). *See also United States v. Faux*, 2016 WL 3648331, at * 21 (2d Cir. July 8, 2016) ("never told that she was *not* free to leave," noting that she did not "seek" to leave). In citing numerous cases in which the courts rely on the fact that the agents never told the defendants that they could not leave, the government ignores the most salient fact in this case. *See United States v. Romaszko*, 253 F.3d 757, 759 (2d Cir. 2001) (defendant was in custody when interrogated at work and "asked to leave or attempted to stand up and was told that she could not").

Accordingly, this Court should find that the government's argument is unpersuasive, conclude that a reasonable person in Mr. Schaffer's position would have believed that the two explicit prohibitions on leaving the office were comparable to a formal arrest, and hold that his statement should have been suppressed.

\*     \*     \*

This Court should also reject the government's assertion that the admission of Mr. Schaffer's statements was harmless, even though, as they describe it, they were "helpful" in proving his guilt. Gov. Br. at 38-39. Mr. Schaffer's statements were harmful because they excluded many avenues of defense. *See* App. Br. at 30-32. For example, Mr. Schaffer could not argue that the computer containing essential pieces of the prosecution's evidence belonged to someone else because he admitted it was his. The government discounts the importance of his statements about the computer, asserting that there was "ample evidence, apart from his own statements" that Mr. Schaffer "used the laptop computer," pointing to information found on the computer that indicated he was the owner. Gov. Br. at 40. But, Mr. Schaffer revealed the password to his computer during the interrogation. Without the password, the government may not have been able to access the computer at all, no less find the information on the computer that they assert make it "evident" that he was the "primary user." Gov. Br. at 40-41.

7

Additionally, the government asserts that without Mr. Schaffer's admission that he owned the email address paramountpics1@aol.com the prosecution could have woven together different pieces of evidence to prove the same thing, stating inaccurately that Mr. Schaffer was "the only person present" at the office, so he necessarily had to be the author of the emails directing the complainant there. Gov. Br. at 40. This argument ignores that Ms. Sierra testified that she had seen someone else in the office other than Mr. Schaffer. T. 61, 94. Mr. Schaffer's statement, however, completely foreclosed a defense focusing on this second person, who could have had access to the office, computer, and email.

Mr. Schaffer's statements were helpful to the prosecution and damaging to the defense, and the government has not shown that they "did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *cf. United States v. Bailey*, 743 F.3d 322, 345 (2d Cir. 2014) (finding improper admission of exculpatory statements was harmless).

### Point II

> Admitting videos of appellant apparently sexually assaulting two young girls, who were completely unrelated to the charged crimes, violated appellant's due process rights.

A large portion of the prosecution's case against Mr. Schaffer revolved around his purported general propensity to commit sexual assault. The jury watched explicit videos of unrelated sexual assaults for about an hour and a half – a huge amount of

8

time during a brief trial. These videos were admitted under Rule 413, which allows evidence of prior sexual assault to be admitted for any purpose, including as evidence of general propensity. In his main brief, Mr. Schaffer argued Rule 413 was unconstitutional on its face and as applied to him, and that the videos also should have been excluded on evidentiary grounds because they could scarcely have been more prejudicial. In response, the government offers no persuasive justifications why Rule 413 is constitutional, but instead points out that some courts in other jurisdictions have rejected constitutional challenges and rehashes the debunked arguments underlying the rule's passage. It does not respond separately to Mr. Schaffer's argument that the rule was unconstitutionally applied in his case.

This Court should reject the government's arguments, hold that Rule 413, on its face, violates a defendant's fundamental due process right to a fair trial and that because of the particularly explicit nature of the evidence introduced here, violated Mr. Schaffer's right to a fair trial. Alternatively, this Court should find that the videos should have been excluded as more prejudicial than probative.

    A.    Rule 413, which allows evidence of any prior sexual assault to prove a defendant's general propensity to commit sexual assault, is facially unconstitutional.

In Mr. Schaffer's main brief, he argued that Rule 413 is unconstitutional because general propensity may not be used to prove guilt of a charged crime. App. Br. at 34-35. In response, the government conflates Mr. Schaffer's facial due process

9

argument with his evidentiary argument. In doing so, it fails to explain why Rule 413 does not dilute the fundamental principle that the government must prove guilt of the charged crime beyond a reasonable doubt and violate the rule that propensity to commit criminal conduct cannot be used as proof that the defendant committed the particular criminal act charged. *E.g. Old Chief v. United States*, 519 U.S. 172, 180-82 (1997). The government has offered no persuasive justification why this Court should not accept Mr. Schaffer's argument and conclude that Rule 413 is unconstitutional.

Neither this Circuit nor the Supreme Court has considered whether Rule 413 violates due process. Nonetheless, the government misleadingly suggests that this Court has already decided this issue, concluding that Rule 403 "acts as a sufficient balance for a defendant's rights" in admitting Rule 413 evidence. Gov. Br. at 49. But the cases it cites in support of this proposition analyze the admission of sexual assault evidence only on evidentiary grounds. Gov. Br. at 49, citing *United States v. Donaldson*, 577 F. App'x 63, 65 (2d Cir. 2014); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997).[2] These cases do not address Mr. Schaffer's constitutional arguments.

Alternatively, the government suggests that this Court should blindly follow the handful of circuits that have determined that Rule 413 was constitutional because Rule 403 was sufficient to protect a defendant's due process rights and "ensure that

---

[2] The other case cited, *Morris v. New York*, 2008 WL 850679 (E.D.N.Y. Mar. 29, 2008), analyzes the admission of a defendant's prior sexual abuse of the same person alleging abuse in the current case. The court did not address the constitutionality of Rules 413 or 414.

10

potentially devastating evidence of little probative value will not reach the jury." Gov. Br. at 48. The government does not rebut Mr. Schaffer's argument that this Court should not follow those cases because Rule 403 is, by design and in practice, merely a rubber stamp for Rule 413 evidence and, therefore, cannot protect the defendant's due process rights. App. Br. at 35-37. Nor does the government explain why this Court should conclude those cases were correctly decided. Instead, the government's argument on this point only accentuates the lack of procedural protection Rule 403 provides: the government describes the admission of prior sex offenses as the "norm," comments that Rule 413 espouses a "broad principle[ ] of admissibility," and cites a long list of cases in which appellate courts have held that "trial courts properly admitted evidence of prior sex offense and child molestation offenses" despite Rule 403. Gov. Br. at 46, 49-51. That Rule 403 rarely if ever prevents the prosecution from introducing evidence under Rule 413 underscores that Rule 403 does not adequately protect defendants' constitutional rights.

The government's attempt to distinguish recent state cases that have ruled laws similar to Rule 413 unconstitutional is no more persuasive. Gov. Br. at 52. The government points out that, under those decisions, prior sexual assaults could still be admitted for particular reasons, for example as evidence of motive or intent, so long as they were not admitted to prove general propensity. Gov. Br. at 52, citing *State v. Cox*, 781 N.W.2d 757(Iowa 2010) and *State v. Ellison*, 239 S.W.3d 603 (Mo. 2007). This

11

line of argument misunderstands Mr. Schaffer's contention that Rule 413 is unconstitutional precisely because it allows evidence to be admitted to prove a defendant's general propensity to commit sexual assaults. This same argument would not apply if the evidence was only admitted for specific purposes outlined in Rule 404 (b)(2), such as motive, opportunity, and intent.[3]

Finally, the government reiterates the assumption underlying Rule 413's passage by Congress that past sexual misconduct is relevant evidence of guilt of the charged sexual crime. Gov. Br. at 42-46. As Mr. Schaffer explained in his main brief, there is a wealth of legal scholarship debunking this assumption and recognizing that people convicted of sex offenses are no more likely to reoffend then people convicted of other types of crimes. App. Br. at 40-41 (citing, among other things, a paper published by the Department of Justice). The government does not offer any reason why this Court should consider the legislative basis for the rule, which has since been widely discredited, in evaluating whether Rule 413 is constitutional.

For the reasons above and in Mr. Schaffer's main brief, this Court should find that Rule 413 violates the fundamental principles of our criminal justice system.

---

[3] While the government notes that the district court believed the evidence admitted against Mr. Schaffer could have been relevant to prove the element of intent, the court did not limit the jury's consideration of the evidence in any way. A. 210.

    B.    The admission of the other sexual assault evidence violated appellant's due process rights.

In his main brief, Mr. Schaffer also argued that Rule 413 was unconstitutional as applied to him because the videos admitted under the rule were particularly prejudicial and the purposes underlying Rule 413 – boosting the credibility of a child witness or dealing with a he-said/she-said situation – were not served. App. Br. at 41-42. The government offers no response to this argument. This Court should find that in a prosecution that did not solely rely on credibility, introducing videos of unrelated, graphic sexual assaults as evidence of Mr. Schaffer's guilt of the charged offense was fundamentally unfair and violated his due process rights.

    C.    The videos of unrelated sexual assaults were more prejudicial than probative.

Finally, Mr. Schaffer argued that the unrelated sexually graphic videos should also have been excluded on evidentiary grounds because they were more prejudicial than probative. The government asserts that it is "simply untrue" that the 413 videos were more compelling, graphic and disturbing then the evidence of the charged crime because the videos of Ms. Sierra "were extremely similar." Gov. Br. at 56. The videos related to the charged crime showed Ms. Sierra, who was one month short of the legal age of consent, trying on bathing suits; they did not show Mr. Schaffer having sex with Ms. Sierra. In contrast, the videos admitted under Rule 413 not only showed much younger girls – aged 8 or 9 and 12 or 13 – in bathing suits, but also depicted

13

explicit sex acts. It is indisputable that the graphic content of these Rule 413 videos was vastly different than the video of Ms. Sierra.

The government also asserts that any prejudice from the videos was cured by the court's charge, claiming that the charge told the "jury precisely" "for what purposes [the video evidence] could, and could not, be used." Gov. Br. at 60-61. But the charge here did not limit the jury's use of the evidence. Instead, the jury was told they could consider the unrelated videos for *any* purpose, including for their "bearing" on whether he "committed the offenses" charged. A. 210. Because the charge had no limits on what the evidence could be used for, it could not have cured the prejudice from the videos.[4] Instead, the videos of unrelated sexual assaults were extremely prejudicial, essentially ensuring Mr. Schaffer's conviction, and should have been excluded.[5]

---

[4] The government also vigorously defends the court's decision not to instruct the jury that Mr. Schaffer was already facing pending charges related to the videos. Gov. Br. 58-61. But the government does not rebut the common sense conclusion that, absent any instruction to the contrary, the jury would have speculated that Mr. Schaffer would never face judgment for the acts in the other videos if they did not convict him.

[5] The government does not dispute that if this Court finds that the videos were admitted erroneously, that the error would be harmful.

14

## Conclusion

For the reasons set forth above and in the main brief, the Court should reverse Mr. Schaffer's conviction, suppress his statements, and order a new trial.

Dated: New York, New York
July 13, 2016

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU

/s/
**ALLEGRA GLASHAUSSER**
Assistant Federal Defender
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8739

## CERTIFICATE OF SERVICE

I certify that a copy of this Appendix has been served by CM/ECF on the United States Attorney/E.D.N.Y.; Attention: **PETER BALDWIN, ESQ.,** Assistant United States Attorney, 271 Cadman Plaza East, Brooklyn, New York 11201.

Dated: New York, New York
      July 13, 2016

                                                  /s/
                                     Allegra Glashausser